UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JARED T. GREINER,

        Plaintiff,

v.

COUNTY OF OCEANA et al.,

        Defendants.
_____/

Case No. 1:19-cv-936

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by Jared T. Greiner, who is the Personal Representative of the Estate of Gary Greiner, a pretrial detainee in the Oceana County Jail, under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants County of Oceana, Sheriff Craig Mast, and Lieutenant Louis Herremans. The Court will serve the complaint against Defendants Deputy Treven Padilla and Deputy Brad Fritcher.

**Discussion**

I. Factual allegations

At the time of his death, Plaintiff's decedent, Gary Greiner was confined at the Oceana County Jail. Plaintiff alleges that Gary was arrested by the Oceana County Sheriff's Department on November 3, 2018. Deputy Sheriff Young conducted the booking process at approximately 10:30 p.m. The Medical Assessment form shows that Gary had been hospitalized for psychiatric care approximately one month prior and that Gary was contemplating suicide. Consequently, Gary was placed on suicide watch.

On November 4, 2018, at approximately 4:00 a.m., Deputy Young called Community Mental Health. Deputy Young performed checks on Gary every fifteen minutes from 10:35 p.m. on November 3, 2018, until 6:00 a.m. on November 4, 2018. Later that day, Community Mental Health worker Bart Theodore Dawson, LLPL, came to see Gary and formulated a Mental Health Management Plan. The plan included specific recommendations to be implemented by jail staff, including a restriction on sheets and blankets, thirty minute cell checks, and continuous video observation. The plan specified behaviors to observe and report as "Suicidal statements; preparatory actions (i.e. searching for sheets, preparing his own garments in a fashion to hang himself)." (ECF No. 1, PageID.5.) For staff interventions, the plan stated "Jail protocol as needed." (*Id.*)

Plaintiff's decedent, Gary, was dressed in "blues" and was placed in cell 13B. In the Jail Activity Report for November 4, 2018, Defendant Fritcher noted that he was on duty from 6:00 a.m. to 6:00 p.m. and performed cell checks on Gary at 2:00 p.m., 2:30 p.m., 3:00 p.m., 4:00 p.m., and 4:30 p.m. Deputy Young was on duty beginning at 6:00 p.m. and working until 6:00 a.m. on November 5, 2018. Deputy Young performed cell checks at 6:04 p.m., 6:30 p.m., 7:00

p.m., 7:30 p.m., 8:00 p.m., 8:30 p.m., 9:30 p.m., 10:00 p.m., 10:30 p.m., 11:00 p.m., 12:00 a.m., 12:30 a.m., 1:00 a.m., 1:30 a.m., 2:00 a.m., 2:30 a.m., 3:30 a.m., 4:30 a.m., and 5:30 a.m. Deputy Hay performed checks on 3:00 a.m., 4:00 a.m., and 5:00 a.m.

Defendants Padilla and Fritcher were both on duty from 6:00 a.m. until 6:00 p.m. on November 5, 2018. Defendant Fritcher was assigned to "booking" and did not perform any cell checks on Plaintiff's decedent, Gary, on November 5, 2018. Defendant Padilla noted in the Jail Activity Report that he performed cell checks on Gary at 6:30 a.m., 7:00 a.m., 7:30 a.m., 8:00 a.m., 8:30 a.m. (via camera), 9:05 a.m. (via camera), and 9:38 a.m. Plaintiff asserts that review of the video footage shows that Gary engaged in preparatory actions from 9:00 a.m. to 9:14 a.m. on November 5, 2018, when he paced repeatedly around the cell, inspected the inmate visitation kiosk, moved a trash can further from the kiosk, wrapped the cord to the handset of the visitation kiosk around his neck, and lowered himself to the floor with the cord wrapped around his neck. Plaintiff states that video footage also shows that Gary was hanging from a phone cord, motionless, with his head slumped forward from 9:14 a.m. until 9:38 a.m.

Plaintiff alleges that jail security monitors were readily visible in the booking office of the jail and in the Correction Officers' office in the housing area. Plaintiff states that it is clear that Defendants Padilla and Fritcher failed to check on Gary during the time that he was hanging with a phone cord around his neck, a period of 24 minutes. At 9:38 a.m., while returning inmate laundry, Defendant Padilla found Gary with the cord around his neck and radioed Defendant Fritcher for assistance. Defendant Padilla lifted Gary's body while Defendant Fritcher removed the cord from his neck. A 911 called was placed from the jail at 9:39 a.m. and EMS arrived at 9:46 a.m. Plaintiff reportedly had a pulse before he was transported to the hospital. Plaintiff was

3

taken to the hospital by EMS on 10:08 a.m. on November 5, 2018. Plaintiff was pronounced dead on November 16, 2018.

Plaintiff contends that Defendants conduct violated Gary Greiner's rights under the Eighth and Fourteenth Amendments. Plaintiff seeks damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his decedent Gary's rights under the Eighth and Fourteenth Amendments. The Eighth Amendment itself does not apply to pretrial detainees such as Plaintiff's decedent. *See Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016). Instead, the Fourteenth Amendment grants analogous rights to adequate medical treatment to pretrial detainees. *Id.* (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)).[1] The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

---

[1] In *Kingsley v. Hendrickson*, 576 U.S. ___, 135 S. Ct. 2466 (2015), the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment. The Court rejected a subjective standard, holding that the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id.* at 2473-74; *see also Coley v. Lucas Cty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*). In *Richmond v. Huq et al.*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit declined to decide whether, in the context of a failure to provide medical care, *Kingsley* eliminated the requirement of proving the subjective prong of the deliberate indifference test for pretrial detainees under the Fourteenth Amendment. *Id.* at 938 n.3. As a consequence, the two-pronged deliberate-indifference standard continues to apply to medical claims by pretrial detainees.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Mental illness that places an individual at risk of committing suicide satisfies the objective component of a deliberate indifference claim. *Burns v. Robertson Cty.*, 192 F. Supp. 3d 909, 920-21 (M.D. Tenn. 2016) (citing *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001)). Although there is no right to be screened correctly for suicidal tendencies, once a prisoner has been

6

deemed "suicidal," there is a clearly-established right to continuing medical treatment to address that risk. *Slone v. Lincoln Cty.*, 242 F. Supp. 3d 579, 589 (E.D. Ky. 2017), *judgment entered,* No. CV 5: 15-327-DCR, 2017 WL 5653879 (E.D. Ky. Mar. 24, 2017), and *appeal dismissed*, No. 17-5339, 2017 WL 4228667 (6th Cir. June 27, 2017) (citing *Comstock*, 273 F.3d at 702-03).

In this case, there was a plan in place to address the risk that Plaintiff's decedent would attempt suicide. Defendants Padilla and Fritcher were on duty at the jail during the relevant time period. Both Defendants Padilla and Fritcher were aware of the risk of suicide and the measures prescribed by the plan, which included careful observation and checks every 30 minutes. Jail security monitors were readily visible in both the booking office of the jail and in the Correction Officers' office. Defendants Padilla and Fritcher do not appear to have strictly complied with the measures set forth in the care plan, which allegedly allowed Plaintiff's decedent to hang himself using a phone cord. The Court concludes that the facts set forth in the complaint are sufficient to state deliberate indifference claims against Defendants Padilla and Fritcher. Therefore, the Court will not dismiss these claims.

Plaintiff names the County of Oceana as a defendant in this case. Oceana County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.*

Plaintiff's allegations against the county essentially rest on a theory of vicarious liability and therefore do not state a claim. *Id.* To the extent that Plaintiff suggests the existence of a custom of allowing officers at the Oceana County Jail to be deliberately indifferent to the needs of inmates, his allegations are wholly conclusory. As the Supreme Court has instructed, to

7

demonstrate that a municipality had an unlawful custom, a plaintiff must show that the municipality was deliberately indifferent to "practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60. Plaintiff cites no prior incidents demonstrating a widespread pattern. He merely suggests that such a pattern exists. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (2007).

Defendant Mast was Oceana County Sheriff during the pertinent time period. In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right. Plaintiff fails to allege any specific facts showing that Defendant Mast established a policy or custom to violate inmates' rights. Plaintiff's assertion that Defendant Mast failed to suspend or discipline Defendants Padilla and Fritcher following the incident cannot show that Defendant Mast established a policy or custom which resulted in his decedent's death, because the failure to discipline did not occur until after his decedent's suicide.

Finally, Plaintiff makes a conclusory assertion that Defendants Mast and Herremans failed to train and supervise Defendants Padilla and Fritcher. Government officials

may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff makes numerous conclusory assertions regarding the lack of training in the Oceana County Jail. However, Plaintiff fails to allege any specific facts supporting these assertions. Accordingly, he fails to state a claim against Defendants Mast and Herremans.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants County of Oceana, Mast, and Herremans will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Padilla and Fritcher.

An order consistent with this opinion will be entered.


Dated:   December 13, 2019                         /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge

9